Please be seated. Ms. Albrow. Good morning, your honors. May it please the court. I'm Kimberly Albrow here on behalf of the appellant Rojay Lawson. Mr. Lawson presented three sentencing issues in his briefing, and I will discuss those here today. The first one is whether the vulnerable victim enhancement was erroneously applied to him. The second is whether the district court erroneously denied him a minor participant reduction on his guideline range. And the last issue was related to loss calculation. Mr. Lawson's circumstances related to the vulnerable victim enhancement is on all fours with this court's Lamas case. There were two requirements set forth in Lamas. One was that the district court must determine the victim was unusually vulnerable in some way. And the second is that the district court must assess whether the defendant knew or should have known of this particular vulnerability identified in the victims. And while I didn't find any case on point in this circuit, the 11th and 8th circuit, as noted in the briefs on page 17 and 18, have determined that age alone is not a sufficient characteristic to make someone vulnerable. It would depend on a larger contextual problem. I mean, there could be instances where an elderly person was a victim of a crime and vulnerability wouldn't be at issue. But here there was a good bit of evidence that these individuals who were the recipients of this scam were targeted precisely because they were elderly. And when we're talking about an elderly victim in the particular context of a scam, it would be more likely, would it not, that they were targeted because of their relatively advanced age. Well, I would disagree with that. I think that's exactly what is not allowed under the case law, that just because they are elderly, even in a certain type of criminal behavior, there still has to be an additional vulnerability. What's the standard in review here? It's clear error. Clearly erroneous? Clearly erroneous, because vulnerable victim is considered a factual finding. So what I would say is that while many of the victims that were identified in the record were what is considered elderly, there were others that were younger than what is probably considered elderly. For example, on JA-169, the victim's ages are given, and one was 46, another was 46, one was 61, one was 59. But the point is that there are many elderly people who would not be particularly susceptible to this scam, and that is why the finding is there's a second step pursuant to LAMAs. Counsel, what do we do? I mean, I understand your point, and I understand Judge Wilkins' point that there is some evidence particular to this case. But what do we do with all of the work that is done by Congress and the Sentencing Commission that says that age is a vulnerability, right? I mean, we go through over the last couple of years, there's like a Stop Senior Scams Act, right? There's like a World Elder Abuse Awareness Day. There's the Senior Safe Act from 2018. There's the Elder Abuse Prevention and Prosecution Act. All of these things include these findings that the elderly are susceptible to being defrauded, right? And then the Sentencing Commission recently does a revision of its guidelines, totally appropriately it seems like to me, to say, well, particularly young people, we ought to pay particular attention to whether that's mitigating for them, just based on the age and the recognition that an 18-year-old's noggin doesn't work quite as well as somebody that's a little bit older, right? That seems like a totally reasonable judgment for the Sentencing Commission to make, and they've done so. But why do we sort of ignore the reality, it seems like to me, that at least Congress and the Sentencing Commission, and I don't think they're alone in this, sort of recognize the reality that those that are elderly are disproportionately vulnerable to being defrauded in schemes exactly like your client has designed and targeted? Well, I just want to make it clear, I don't think he designed this scheme. That's part of the argument later, so I don't want to leave that on the record. But it is true that there are places in the guidelines and in the law where age is a factor. Certainly, Miller v. Alabama is about whether a youth can be sentenced to death or sentenced to life without parole. As Judge Richardson pointed out, I mean, it's a matter of very common knowledge that elderly persons, they're likely to live alone, more likely than not to live alone. Their spouse has often passed away, dead. They're often victims of cognitive decline, and many cases lack the stamina and acuity to resist these kinds of scams. And in addition to the voluminous evidence to which Judge Richardson, I think, rightly points, the vulnerable victim enhancement provision in the sentencing guidelines mentions elderly persons. And they were targeted because they were elderly, and the indictment to which he pled, in account one of the indictment, says he contacted elderly persons with requests for bogus fees and taxes, and then you get down to the plea colloquy, and the prosecution reads the different elements of the offense, and one of those is the elderliness of the victims, and then the factual basis of the plea is supplied when the individual says, he says, do you agree, and he says, I agree to this. So you have the indictment and you have the plea colloquy that says they've been targeting elderly people, and you have elderliness and age mentioned in the sentencing guidelines provision as one of those things that was a characteristic of a vulnerable victim. And here we are under a clearly erroneous standard on what seems to me to be a factual finding on an enhancement that we accord a degree of deference to district judges. How can we say that people who are targeted because of their age and how can we say that they're not vulnerable? I mean, it's a conclusion that just won't stand up in the eyes of Congress, and it won't stand up in what people understand are the natural infirmities that come with advancing age. Well, Your Honor, again, age is not the sole factor. There is an aspect of vulnerability. Mr. Lawson does not dispute that he was aware that some of these people that were called were elderly. He said that he was aware when the callers made the calls. It was, again, as a factual matter, one of the reasons that these folks were targeted, because it was more likely that they were going to be susceptible to this kind of fraud. And, you know, the nub of it is here that you've got people in an advancing state of frailty that are, with full awareness, the target of a fraudulent scheme to swindle them out of what may be limited funds. And the fact that they were elderly made them a far more attractive target for what these people were trying to do. And you're going to say that a district court was clearly erroneous in taking that into account? The only vulnerability offered at the district court was that one person had Alzheimer's, and that was discovered by the postal inspector in a police report in Washington State. So there is no evidence whatsoever that Mr. Lawson knew about this particular person's vulnerability. And then, in passing, one man might have had dementia. The point is that age alone isn't enough. There has to be some other vulnerability, and there has to be a showing. It's not just age alone. I grant you there are plenty of situations where someone who, you know, may be the victim of a crime, and they could be, you know, by some kind of happenstance, or it could be that there was an encounter in the street or whatever. I don't know, but here it seems to me where you're talking about a scam, and you're talking about fraud, and you're talking about phone calls and the rest, it is exactly the type of activity that is likely to prey successfully in this case because they reap $2,720,000 from these people. And so when you put age in context with a scam that looks upon vulnerability as, looks upon age as something that increases the probabilities of susceptibility to this kind of fraud, when you put it in the context, and then you're saying that, are we saying the district court was clearly erroneous in applying the enhancement? I don't get it. The fact that if age alone is sufficient to show the vulnerable victim enhancement in this type of fraud scheme, there would be no reason to have the additional vulnerable victim enhancement because the assumption would already be made regardless of the specific facts in this case. From your standpoint, this thing is made all the worse by these, I guess the term is reloading. And what I would say is, you know, reloading means multiple calls, multiple calls. And so you have many elderly persons that were preyed upon not once, but repeatedly. And we're supposed to say, you know, no problem, they're not vulnerable. Well, again, I don't think there's anything in the record that says that my client was aware that he received money from the same people or that the reloading was going on. And Lomas specifically addressed that issue where reloading was never brought up at the district court in Lomas or here in this case, and the Lomas court still sent the case back to the district court because there was no presentation of the reloading issue. The first time that has come up is in the government's brief on appeal. The second issue is the minor participant, and I'm getting low on time, so I'll briefly address that. Mr. Lawson argued that he should be a minor participant, and the district court denied that. The main issue is that the analysis was focused on something that the sentencing commission has explicitly said does not preclude a person from getting the minor participant reduction, and that is that the person was essential to the scheme. There are factors in the guideline. The district court did not address those factors that are in the guideline, and when probation responded to Mr. Lawson's objection, even though they noted those factors, most of what probation focused on was that- Wasn't there a finding here that Mr. Lawson played a critical role in collecting, removing, and laundering the proceeds of the fraudulent activity that he was involved in as a part of the laundering scheme and transferring funds to Jamaica to an account that he had opened? I mean, he was, in terms of the handling of the funds, he was quite an instrumental agent. He wasn't a minor player. I'm about to run out of time, if I'm allowed to respond.  The court said that he had equal engagement with his co-defendant as the organizer of receiving funds, and that is not looking at the broad context of all the co-conspirators, and I see I'm out of time. Hold on a minute, let me just check. All right, thank you very much. Thank you. Let's hear from Ms. Hoffman. I'd be happy to hear from you. Thank you, sir. May it please the Court, Andrea Hoffman on behalf of the U.S. Attorney's Office. Your Honors, as Judge Wilkinson and Judge Richardson were discussing, the Vulnerable Victim Enhancement in this case was properly applied. This Court's case law in Sterling, U.S. v. Sterling, U.S. v. Shepard, in Stencil, all established that there is a strong inference when victims are elderly. They're specifically targeted for being elderly, and that is, Judge Wilkinson was recognizing, these are often persons who are isolated in their homes. The fraudsters reach into their home and persuade them and induce them to give away assets they can rarely afford to give away. The Court in both Sterling and in Stencil has said that there can be a strong inference that they are targeted specifically because of their vulnerability and that the nature of the kind of fraudulent activity involved, in Sterling, for example, it was specifically the same kind of Jamaican lottery scam, that these types of frauds in and of themselves are targeting elderly people for their age-related infirmities and seeking to capitalize on the kinds of things that happen. They're vulnerable from a variety of perspectives. Number one is cognitive decline. Number two is they live alone in many instances because their spouse has passed away. And the third thing is they very often have limited needs, and many of them are living off of Social Security, and that's about it. And they're being preyed upon with all these recognized general infirmities. They're preyed upon to depart with what are often, not in every case, but that's not the question, what are often very limited needs, and they're preyed upon by fraudsters to take the limited funds that they may still possess. And just as a humanitarian matter, preying upon these kind of people, it seems to me, is exactly the kind of thing that Congress and the Sentencing Commission had in mind for this enhancement. I would completely agree, Your Honor, and the District Court was equally offended by it. It called it a heinous crime and was disturbed about the targeting of the vulnerable stage of these victims when it made its finding at page 86 in the joint appendix. The court was completely persuaded this defendant knew exactly what they were doing, that they were targeting the schemes for the reasons the court referenced earlier about the indictment, the elements of the offense, the factual proffer. It doesn't mean that every elderly person who is a victim of some kind of crime is automatically entitled to the enhancement. That's a more absolute position. I wouldn't go that far. I don't think our precedent allows it. But when you take it in the context of this kind of scam and the vulnerability for obvious reasons of elderly persons to this kind of misconduct, it's the context, it seems to me, that matters. I agree completely, Your Honor. Eighty of the 179 victims were over 70 years old. It was clearly the context and the targeting they were doing. If there are no other questions about the vulnerable victim issue, I'll move on to the minor role that counsel discussed. Can you start on the minor role participant by telling me how I ought to think about defining the scope of sort of conspiratorial conduct? It always strikes me as a hard question, and I take your colleague's argument to fundamentally be you can't just look at these two defendants. You've got to look at the Jamaican lottery scam as a whole, right? Everybody that's involved in it. In the drug conspiracy context, the similar argument is made that, like, my guy was, yes, distributing large quantities of cocaine, but when you consider the chain from the farmer in Columbia all the way to the distribution in Columbia, you know, South Carolina, that being, that that, you know, and you consider the whole enterprise, you know, my, you know, kilo-level dealing is really a minor role. But how do I think about that? How do I draw those lines? Do you have views on how we ought to think about the Jamaican lottery scam as a whole? Like, everybody that's involved in the same basic scam? Or is there some way to draw lines there? There are ways that the court could choose to draw lines, Your Honor. I think in this context the district court did consider the entirety of the scam, so you can look at it in that way. One of the lines that you could consider drawing is that he was held responsible for the losses that came through he and his mother, not all the losses that came through every phone call and every scammer and every person that was moving money for this organization. So because he was held accountable for losses that were limited relatively, even in his own circumstance he wasn't held accountable for every kind of loss that could have been held to he and his mother. You could look at it smaller that way if you wanted to. One way to think about it is to use the sort of loss amount, or in the drug context the drug quantity, as a way of sort of defining the scope of this sort of criminal organization or enterprise? You could, Your Honor, just to give a concrete example. If there were a million dollars' worth of money moved and this defendant only was responsible for moving 400,000 of it and he was held to a loss amount in a sentencing guideline range that's the 400,000, well, he's not a minor role player in moving that 400,000. He's a key player. Frankly, as Judge Wilkinson said, he was a key player no matter what because he was autonomous. He was organizing the bank accounts. He was making the determinations for whether to send the money from a bank account or a wire transfer, which kind of wire transfer, and that's the larger part. The thing here, it's a good point that my colleague makes, but he was found to play a critical role in all the aspects of it, in the collecting of the funds, in moving the funds around, in concealing with them, and, you know, it's a chain of events that one cannot be easily separated from another. The conspiracy as a whole depends upon the success of each link and each part, and this individual was up to his eyeballs in not just one aspect of the conspiracy, but in all the links of it. But, you know, again, this is a clearly erroneous standard of review. It's hard to reverse Judge Hendricks' view, committing clear error when somebody is actively and prominently engaged in maneuvering funds around, and not just in maneuvering funds, but collecting the money, too. To the court's point about collecting, one of the things I would emphasize for you is this defendant pled guilty to eight counts involving reloaded victims. If you look at pages 148 through 149 of the PSR, to which there were no specific objections lodged to those paragraphs, eight of the counts that he pled to involved reloading of victims. So it's, again, receiving money from multiple places that are targeted in to operate this scheme to the vulnerable victim status. This defendant's fingers were all over it, including recruiting people. There's no circumstance in which you could say that this defendant was substantially less involved, less culpable, than the majority of the persons involved in the operation. And so the minor role calculation should be affirmed. There are no other questions from the court. I have a question, Ms. Hoffman. Yes, sir. He was enhanced at 14 levels in terms of loss here. But it seemed to help me with this. It seemed like it's a question about intended loss versus actual loss. Because the district court asked a question. He said, I think he says, the intended loss is $720,948. Is that right? And the probation officer said, yes. But in other parts of the record, they said that $720,948 was the intended loss. And in another place, it says he's responsible for the same amount, exact amount for actual losses. And that makes a difference here, doesn't it? Because under the guidelines, you have to weigh the greater of those two. But here, it seemed like the record is some confusion. Doesn't that require remand for that aspect of the sentencing procedural error? It does not for several reasons, Your Honor. All right. First is that the dependent never raised this objection. That's right. But that's why we review it at a different level, right? Correct, Your Honor. That's right. So setting now aside the question of whether plain error or otherwise. But it is very important that you sentence correctly, right? That's the biggest part of the whole thing is sentencing. Absolutely. Right. Go ahead. Now, it's also not an error, Your Honor. It is an inadvertent loose use of – excuse me, stumbling over my own tongue. Apropos in this moment. It's loose language by the court. The actual – Loose language by the court. That was a response from the probation, right? The judge asked the question, is it that? And the answer was yes. Am I wrong about that? You are correct, Your Honor. JA 101. You are absolutely correct. Both the court and the probation office used the term intended at some point. If you look to exhibit pages 168 through 172, which is attachment A to the PSR, this is the manner in which the actual loss amount was calculated. The figures are there. On the last page, on page 172, it demonstrates that the actual loss was – that the loss figure was actual losses. If you look more even basically at the actual math that was used to determine losses, on this category there's $405,401 in losses that are known losses to known victims. There's also $315,547 in known losses to not fully identified victims. Those actual losses are the basis by which the court sentenced this defendant. How do we know the actual losses to people you don't know about? Tell me. If you look at page 172 specifically – I didn't bring it up, but I can – Go ahead. There's a third category of victims in that chart, Your Honor. There are persons who are fully identified for whom no losses can be specifically identified. All right. So there's a third category. If the court had attributed a loss figure to that category of persons, we'd have intended loss. We'd have – if it had made an estimate of – But it didn't. It didn't. Tell me about these people. Those are the people you're talking about, you can't identify them, but you attribute an actual loss to? There are persons where they can – they've traced out $720,000 and change in losses. They can track that. The course of those losses – How is that traced without a person being identified as giving up the money? You're tracing the monies as they are coming into the accounts for Roger Lawson and his mother, specifically. Because they did, back to Judge Richardson's point, they did limit the loss calculations to the parties that were involved in this case, not everything that might have come out of this Jamaican scheme. And so across the breadth of all of the various accounts that they were using and the money transfers that they could identify, these are the losses that could come up. And the government specifically took a conservative approach to it and asked the court to do so as well, which the court did do. So there was no intended loss calculation in this case? Correct. But he certainly mentioned it many times in the record. It does, Your Honor, but because the math is – I was going to just disregard that. With all due respect to you as counsel, I know you're a worthy and trustworthy counsel, but we just can't just do that in terms of record. We don't normally do that. Is it a record evidence? It's a record evidence. Well, two things, again, Your Honor. One, the court is entitled to – district court, I mean – was entitled to sentence on the grader of intended versus actual loss. So – and intended loss, virtually always. I can't think of a hypothetical in which intended loss wouldn't include actual losses.  That's where I thought you were going to go. Wait a minute. You can't think of a way intended loss wouldn't include actual? Assuming that – Absolutely. You could call a person up and try to make a mark for five months and never get any money, and you intended, but it's not actual. Sir, I didn't get the sentence all the way finished, and I apologize. I was about to say it. By what I meant is when there have been ascertainable losses and there have been efforts to obtain even greater losses, that actual amount of loss will always be part of the intended loss calculation. But the – how you ascertained that was that that's money flowing into an account solely by deposits. That's right. That's what you told me, right, because that's the kind of money that came through. How do you know all of that was based on this, this activity? Well, that's a – so that's different. I mean, you know, like you had to watch figures, and I heard exactly what you said. You said we calculated that based on what came into their account. That's not attributed to any individual. You're just saying, well, everything you put in this account had to have come from a victim, right? Isn't that the math logic to that, arithmetic logic to that? That is the arithmetic logic to that, Your Honors. But fraudulent bank accounts that this defendant admitted creating in the indictment and to his plea colloquy were the sources for which the government presented lost figures to the probation office and the court. That's based on the defendant's admissions of what they were doing and the defendant's admissions of the accounts that we had identified were fraudulently being used. And those are why we had forfeiture provisions, for example. The loss calculation here was based upon actual loss. Yes. Intended loss was simply a subcategory of an actual loss. And in terms of the sentencing, which, once again, I can't remember where we – a situation where we reversed the district court on a calculation of a loss amount. If you intend a loss, that should factor into sentencing. I would agree, Your Honor. But it's very important because, I mean, that's the calculus of a mass incarceration. This is very important. These numbers, 14-level increase, was it not? Yes, Your Honor. And that was a conservative number for this defendant. Okay. It was conservative or not. That's time you got to spend in prison. I mean, so these aren't just numbers. Maybe we should reverse in some cases when it's wrong. I mean, then we're not just talking about being counting. We're talking about these accounts. This counting equates to time in prison. So I can't think of anything about our Constitution, our framers, who think that something like this is not just pedestrian. It's the sine qua non of your time you spend in prison. Your Honor, I would not be at all treating this in any manner that might be considered disrespectful. The district court itself said this was a heinous crime and that this defendant, albeit. . . It sure is a heinous crime. That's why, you know, he was punished. He was punished. This is an additional aspect of it, and here we do use numbers. I mean, would you agree no matter how heinous this is, if there was no loss, you couldn't elevate the 14th level, right? You agree? No, I wouldn't, Your Honor, because intended loss. . . No, if it. . . If they had been unsuccessful in ever obtaining money. . . Well, let's say. . . Okay, let's say that. But intended loss would still give us a loss. Different hypothetical. Let's say if the loss was only $10,000. Could you go to 14, no matter how heinous this is? No, Your Honor, but it. . . No, you couldn't. Probably wouldn't be heinous the same way when you have 180 victims versus 10. You don't know that. I mean, people's sentences. . . I mean, you know, you're saying that I've seen sentences based on a lot of things about people and who's being charged and how much is being charged has a big factor in terms of how much time they get. So I don't know whether that's true or not. But I do know that the 14th level was based on these numbers, and they're important. And we say the record is there, but we can just ignore it because it was heinous. That's the. . . I'm not asking the court to ignore anything, Your Honor. I'm simply asking you to rely on basic math and the. . . It's not basic math. It's just inconsistency in this record. Do you agree with that? Do you agree that it's inconsistent in terms of these terms being used? I would agree that they're interchangeably used, Your Honor. Actual and intended term. The term intended and actual aren't interchangeably used. This thing is up here on plain error, I think.  It wasn't even emphasized in the oral argument here. But it is nothing. . . There's nothing wrong with basing a sentence and calculating a loss amount on the basis of what is an intended actual loss. I mean, that is a. . . The intended loss goes to the culpability of the crime. It's a mens rea factor. It goes to knowledge. It goes squarely to mens rea. And that's one of the things that you sentence upon. It's one of the things in which guilt or innocence is almost. . . If the district court finds as a fact that someone intended a loss of a certain amount, to me, that's a culpability factor. That's a mens rea factor. That's a knowledgeable. That's a knowing and intelligent factor. And it doesn't seem to be wrong in any way, much less clearly erroneous or plain error to have that kind of factor which is intimately intertwined with culpability. If you plan to defraud somebody of a dollar and through some accident the individual is not identified, it doesn't have anything to do with the fact that you intended that loss of a certain amount. I would completely agree, Your Honor. I do see that my time is up. Counsel, didn't you say that there was no intended loss in this case? That's what you told me. That's what you told me. You said it's all actual. Did you not? Am I misinformed? What I said, Your Honor, is that the actual loss that they attributed to him was actual loss. And you said, didn't you say there was no intended loss? I'm not trying to say that there was no intended loss, Your Honor, because there are, as I noted, there are. In this record, what part was the intended loss? There are identified victims that there is not an identified loss. That could have been included. It was not. I asked what could have been. The question is there is no intended loss in this case. Is that right? In the matter that you're talking, yes, Your Honor, that is correct. In the matter of this record, is that right? Why would you say that? That doesn't seem, I don't understand why you're saying that at all, right? Because there's no reason to think that the $720,000 was accidentally lost, right? He was part of a group that intended to take that from people. And it is both actual and intended. We could have a case where you got more money than you tried to get. All right, that's some accident, right? The teller keys in the wrong number. Then the actual loss would not match the intended loss. But everything here suggests that the amount of money they got is exactly what they intended to get, at least what they intended to get. At least is the right phrase, Your Honor. It is at least what they intended to get. There are victims for whom we couldn't attribute a loss. So stick to your guns. Don't get twisted around on that. I apologize, Your Honor. You've got good counsel here to help you here. But still, the record is the record. That's all I have. Thank you. Thank you, Your Honors. I ask that you affirm. I have nothing. Just briefly, Your Honors, I did not get to the loss amount in my opening. But what I would say is that intended versus actual as far as how I tried to present it in the brief is related to the guideline where one or the other is used. And I think that... But is there, just to ask what I think is Judge Gregory's question, is there any reason to think that the actual loss in this case was not intended by your client? Your client and his mother? I don't... I mean, that's what his confession was, right? He confessed this is what we were trying to do. Well, they received the money that was solicited by their co-conspirators in Jamaica, so whatever came to them is what they expected to get. The question with the interchangeable use of intended and actual is just a matter of confusion, and I think that the Sixth Circuit case of Warshak that was cited in the brief gives a good example of why I raise that issue. It's just that it's hard to determine. I'm not even sure since the district court asked the probation officer what is the intended loss when it appears on the chart that the government referenced and that was attached to the PSR seemed to be actual loss. I don't think that there's an infirmity here, particularly with regard to the amount. The only infirmity is that the victim, the particular victim may not have been identified, right? No, that's not the issue, Your Honor, as far as from my client's perspective because he also raised an issue related to the dates, and he never got an updated chart with the dates. He had no way of figuring out whether this unassigned amount that's on the chart attached to the PSR that was lumped as actual loss, whether that was double counting. The amount of intended loss is, again, the amount of the intended loss is a question of fact, and that's subject to a clearly erroneous standard, and it's up here on plain error, for goodness sake. And I think this whole idea of whitewashing somebody because they only intended the loss, that... The issue about intended and actual loss is not necessarily just about the factual aspect of how much it is. It's a matter of the guideline requires that one or the other be used, and the district court did not seem to make the record clear or make a finding as to what she used to enhance Mr. Lawson's sentence by the 14 levels. Right, that's clear in the record. And I also would say that during the government's presentation, it was referenced that related to the minimal participant, that my client was found to have participated in every aspect of the scheme, and that's incorrect. Even the government's presentation at the change of plea colloquy on JA55-56, they referenced that the Lawsons were involved in soliciting money, that their co-conspirators were involved in soliciting the money and directing it to the Lawsons. So the actual contacting of victims, the soliciting of the money, was done by the co-conspirators, which is why Mr. Lawson argues that his minor participant argument should have been considered in light of all the people in the conspiracy. The government brief reiterates those facts. It says that the victim sent money to the Lawsons, the Lawsons received the money, and then they were told to send it to Jamaica. So they were directed what to do with it. Mr. Lawson essentially is like a low-level drug courier who received, I think Teresa Lawson might have been the one that said it, she received 10 to 20 percent of all the funds that were taken in. Everything else went to many, many co-conspirators in Jamaica. Page 32 of the government's brief talks about this larger conspiracy in Jamaica. I believe that in the record there are articles talking about these Jamaican sweepstakes schemes, and they are very large, involve a lot of people. The government's supplemental joint appendix has charts where Teresa Lawson was sending money. There are numerous other people besides Teresa and Mr. Lawson listed on that. So I would just ask that the court consider these arguments, and I will rest on the brief because I'm out of time. We thank you very much. We will adjourn court and come down and greet counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Roger L. Gregory, Julius N. Richardson